# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

## No. 98-11436
_____

**BRETT HARTSELL, JACOB WELLS, JOSEPH WELLS, III,
SHAWN PATRICK, CHRISTOPHER SIEMS, SHAWN BEGLEY,
OSCAR TORRES, GERALD DAVIS, Captain,
JEKEITH WILSON, BENITO TORRES,**

**Plaintiffs-Appellees,**

**versus**

**DR. PEPPER BOTTLING COMPANY OF TEXAS,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court
for the Northern District of Texas**
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
March 20, 2000

Before JONES, BARKSDALE, and DENNIS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

The overtime, based on a day-rate, paid by Dr. Pepper Bottling Company of Texas to employees, who claimed compensation on an hourly basis, having been found violative of the Fair Labor Standards Act, 29 U.S.C. §§ 201-19 (FLSA), primarily at issue is whether, before Dr. Pepper could pay overtime on that day-rate basis, pursuant to the method set by 29 C.F.R. § 778.112, employees had to have agreed to be compensated on that, rather than an hourly, basis. We **AFFIRM in PART** and **VACATE and REMAND in PART**.[*]

_____

[*]This case was consolidated for oral argument with *Dufrene v. Browning-Ferris, Inc.*, No. 98-31321, __ F.3d __ (5th Cir. 2000), which also concerns application of 29 C.F.R. § 778.112. The opinion in that case, being issued simultaneously with this opinion, holds, *inter alia*, that § 778.112 provides a proper method for calculating day-rate overtime compensation; and that, as discussed *infra*, employee-agreement is *not* a prerequisite for its

Hartsell and the other plaintiffs (employees) were employed as merchandisers for Dr. Pepper. Merchandisers build and stock displays in stores where Dr. Pepper products are sold. Although employees claimed that Dr. Pepper had agreed to pay them on an hourly basis, it paid them, instead, on a day-rate basis.

Employees were paid every two weeks, and paid only for days they worked. However, regardless of the number of hours worked in a day, they received a full day's pay.

In the light of this day-rate basis, and to satisfy FLSA overtime pay requirements, Dr. Pepper paid overtime pursuant to the method prescribed by 29 C.F.R. § 778.112, quoted *infra*. For each workweek, the product of the number of days worked and the day-rate was divided by the total hours worked that week. That determined the hourly rate of pay. For each hour worked in excess of 40 for that workweek, employees received an additional one-half of the calculated hourly rate. Accordingly, for each hour worked in excess of 40, they received 150% of the calculated hourly rate of pay.

Because of this method, the greater the number of hours worked in a week, the lower the calculated hourly rate. This translated into a lower rate of overtime compensation.

Normally, employees worked more than eight hours a day, 40 hours per week. Additionally, one-half hour was deducted for lunch, regardless of whether they took it. Although employees

application.

cashed their paychecks on a regular basis, they did *not* understand how their overtime pay was calculated.

Pursuant to one of the instructions challenged here by Dr. Pepper, the question of whether employees agreed to be paid an hourly or day-rate was tried to the jury. One employee admitted at trial that he *had* agreed to a day-rate. For the remainder, the jury found that all but one had agreed with Dr. Pepper to be paid an hourly rate.

Whether employees were entitled to compensation for the meal period and the issue of damages, including, *inter alia*, overtime pay and liquidated damages (to include Dr. Pepper's good faith *vel non*), were tried by the court. It concluded that, *inter alia*, employees were entitled to be compensated for the meal period and to liquidated damages. Damages awarded the ten employees totaled approximately $232,000.

## II.

Among other issues, Dr. Pepper challenges the instruction requiring employee-agreement to the day-rate; employees being compensated for the meal period; and liquidated damages being awarded.

## A.

The jury was instructed that, for the day-rate to be applicable, and, therefore, for employees to be subject to overtime pay being calculated pursuant to 29 C.F.R. § 778.112, there had to be a clear, mutual understanding between employee and employer that the day's wage compensated for all the hours worked in a day. Dr.

Pepper contests such agreement being required before § 778.112 can come into play.

Our standard of review for challenged instructions, if the issue is properly preserved in district court, is well-settled:

> First, the challenger must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations. Second, even if the jury instructions were erroneous, we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case.

*Johnson v. Sawyer*, 120 F.3d 1307, 1315 (5th Cir. 1997) (internal citation and quotation marks omitted). Of course, if the issue is *not* preserved, we review *only* for plain error. *E.g., **Highlands Ins. Co. v. National Union Ins. Co. of Pittsburgh***, 27 F.3d 1027, 1031-32 (5th Cir. 1994), *cert. denied*, 513 U.S. 1112 (1995).

1.

Concerning whether this challenge was preserved for appellate review, FED. R. CIV. P. 51 states:

> No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

Dr. Pepper's proposed instructions did *not* include the basis-of-pay-agreement-requirement as a prerequisite for application of § 778.112. A party, however, may *not* satisfy Rule 51's requirements by merely submitting a proposed instruction that differs from that ultimately given. *See **Kelly v. Boeing Petroleum Servs., Inc.***, 61 F.3d 350, 361 (5th Cir. 1995).

- 4 -

Employees maintain that Dr. Pepper failed to specifically object to the given-instruction. The failure to do so may be excused when a party's position equating to an objection has previously been made clear to the trial judge, and further objection would be unavailing. *Russel v. Plano Bank & Trust*, 130 F.3d 715, 720 (5th Cir. 1997). But, we must be sure that the trial court was adequately informed in this fashion. *Id.*

On 13 July 1998, two days before trial, and by a memorandum supporting its supplemental proposed instructions, Dr. Pepper brought to the court's attention *Dufrene v. Browning-Ferris, Inc.*, 994 F. Supp. 748 (E.D. La. 1998), holding, *inter alia*, that employee-agreement was *not* required for application of § 778.112. (As noted, simultaneously with this opinion, we have rendered an opinion in *Dufrene*, affirming the summary judgment in that case.)

At the pre-trial conference that same day, the district judge questioned Dr. Pepper's counsel's interpretation of *Dufrene*, asking: "you mean there doesn't have to be any understanding?" When they replied such was their reading of *Dufrene*, the court stated: "I'll be amazed if that's true. This is a Fair Labor Standards Act [dispute] that goes on the basis of hourly rates, and that's what the statute says, and for a regulation to take out the idea of a contract or agreement or understanding, seems to me unlikely".

On 14 July 1998, just prior to voir dire, the court provided the proposed instructions to counsel. Included was the agreement-requirement. This was discussed at length by the court and

counsel.  In fact, employees' counsel noted that, if employees prevailed in district court, Dr. Pepper intended to challenge the instruction in our court, because, in **Dufrene**, the district court had held such agreement was *not* required.

Obviously, as required by Rule 51, Dr. Pepper brought its objection to the attention of the district court, prior to the instruction being given.  This issue was preserved.

2.

The instruction stated in part:  "The regular rate [of pay] is determined by an agreement between the employer and the employee, either expressly by words or impliedly by conduct".  But, *no* such requirement is found in 29 C.F.R. § 778.112; it states:

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his *regular rate* is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked.  He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

(Emphasis added.)

Again, the plain language of this interpretative bulletin does *not* require that employee and employer have a mutual understanding concerning the "regular rate" of pay.  All that is required is that employee be, in fact, paid a day-rate. **Dufrene v. Browning-Ferris, Inc.**, No. 98-31321, ___ F.3d ___ (5th Cir. 2000).

Notwithstanding employees' claimed hourly-rate basis for compensation, Dr. Pepper paid them a day-rate.  Overtime was

- 6 -

calculated and paid in accordance with § 778.112. Even assuming some form of breach of contract by Dr. Pepper, that is *not* equivalent to a FLSA violation.

In sum, for FLSA purposes, the instruction was erroneous. Restated, the jury was instructed improperly that § 778.112 could *not* be used to calculate overtime pay, unless employees had agreed to a day-rate. Obviously, this affected the outcome of the trial. Accordingly, a new one is required.

It appears that the parties agreed in district court on alternative damages, depending on how different issues were decided. Dr. Pepper urges that we utilize one of the agreed, alternative damages' schedules now. For example, it states that, if this challenged instruction is found wanting, we can simply reverse and render, using one of those schedules. But, as we pointed out at oral argument, to which Dr. Pepper seemed to agree, those schedules do *not* seem to contemplate our reversing the instruction and liquidated damages, *but* affirming the finding that compensation is due for the meal period, discussed *infra*.

Obviously, on remand, a new trial will *not* be necessary if, as they were apparently able to do previously, the parties can agree on the amount of damages.

### B.

Dr. Pepper challenges employees being compensated for their meal period. As discussed, this issue was tried to the court. "Bona fide meal periods are not worktime." 29 C.F.R. § 785.19. For the period to be classified as a meal time, an employee "must

be completely relieved from duty for the purposes of eating regular meals". *Id.*

The "predominant benefits test" is applied to determine who primarily benefits from the period. ***Bernard v. IBP, Inc. of Nebraska***, 154 F.3d 259, 264 (5th Cir. 1998). This is a question of fact, determined in this instance by the district court. Of course, factual findings by the court are reviewed *only* for clear error. *E.g., **Riviere v. Banner Chevrolet, Inc.***, 184 F.3d 457, 459 (5th Cir. 1999).

Examples of different employees' lunch break testimony are: occasionally took it, but *not* too often, because of required work; perhaps took it four or five times during entire employment; disciplined verbally for taking it; never had time for it and only took it here or there; worked most of the time without it; and fairly hard to take it.

Based on our review, the district court did *not* clearly err in finding the meal period was *predominantly* for the benefit of Dr. Pepper. Therefore, employees are entitled to compensation for such time.

C.

Dr. Pepper contests the FLSA liquidated damages, awarded pursuant to 29 U.S.C. § 216(b). They were based on the court finding that, for the overtime pay, Dr. Pepper had *not* acted in good faith, because, *inter alia*, the explanations to employees of how it was calculated were "inept".

- 8 -

Our reversal of the overtime compensation award compels vacating these damages as well.  Although we have upheld the meal period finding, we *cannot* determine from the district court's findings of fact and conclusions of law how, or even whether, that finding was translated into liquidated damages.

### III.

In the light of the foregoing, we need *not* reach the other issue presented by Dr. Pepper.  That part of the judgment as to the lunch period being compensable time is **AFFIRMED**; the remainder of the judgment is **VACATED**; and this case is **REMANDED** for further proceedings consistent with this opinion.

***AFFIRMED in PART;***
***VACATED and REMANDED in PART***

DENNIS, Circuit Judge, specially concurring:

I agree with the majority that the lunch-time portion of the judgment should be affirmed and that the remainder of the judgment should be vacated and the case remanded because the jury was given an erroneous instruction that affected the outcome of the trial. I write separately to emphasize that I find nothing in the majority opinion that limits this remand.

As the majority correctly points out, the standard of review for jury instructions is:

> First, the challengers must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations. Second, even if the jury instructions were erroneous, we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case.

Johnson v. Sawyer, 120 F.3d 1307, 1315 (5th Cir. 1997) (Barksdale, J.). I agree with the majority that the jury instruction requiring an agreement as to the employees' wage structure was erroneous. See Dufrene v. Browning-Ferris, Inc., ___ F.3d ___ (5th Cir. 2000).

The majority states in passing that, based on the record, it appears that the employees were in fact paid a day-rate notwithstanding the employees' claimed hourly-rate basis for compensation. Ante at ___. However, such a resolution of a disputed issue of a material fact determinative to Dr. Pepper's liability is in direct contradiction to the special verdict of the jury, which found that as a matter of fact the employees (save one) were paid an hourly wage. The majority does not address the jury's special verdict nor does it fully explain that the verdict is

- 10 -

reversed solely because of the erroneous instruction and not because of a lack of sufficient evidence to support the verdict.

"We employ a deferential standard of review when examining a jury's verdict for sufficiency of the evidence. Unless the evidence is of such quality and weight that reasonable and impartial jurors could not arrive at such a verdict, the findings of the jury must be upheld. We may not reweigh the evidence, re-evaluate the credibility of the witnesses, nor substitute our reasonable factual inferences for the jury's reasonable inferences. We must view the evidence in the light most favorable to upholding the jury's verdict and may only reverse if the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary conclusion." Douglas v. DynMcDermott Petroleum Operations Co., 144 F.3d 364, 369 (5th Cir. 1998) (citing Ham Marine, Inc. v. Dresser Indus., Inc., 72 F.3d 454, 459 (5th Cir. 1995)). Although based on the record this court may have found differently than the jury, under the deferential standard afforded jury verdicts it cannot be said that the jury's special verdict on the disputed factual issue in the present case is not supported by sufficient evidence. Thus, it is not appropriate to reverse the jury's verdict based on insufficiency of the evidence. It is telling that the majority does not attempt to do so.

The only basis for reversal of the jury verdict, therefore, is the erroneous jury instruction requiring an agreement between Dr. Pepper and the employees before Dr. Pepper may properly utilize the

overtime calculation method defined in section 778.112.  As opposed to reversing and rendering for insufficiency of the evidence, "[a] new trial is the appropriate remedy for prejudicial errors in jury instructions."  Aero International, Inc. v. United States Fire Ins. Co., 713 F.2d 1106, 1113 (5th Cir. 1983); see also Johnson, 120 F.3d at 1315 (holding that remand for new trial due to an erroneous jury instruction is proper because the appellant had not properly challenged for sufficiency of the evidence); Schweitzer v. Advanced Telemarketing Corp., 104 F.3d 761 (5th Cir. 1997); Branch-Hines v. Hebert, 939 F.2d 1311 (5th Cir. 1991); cf. United States v. Cornett, 195 F.3d 776, 781 n.6 (5th Cir. 1999) ("[s]ince we are reversing for a reason other than sufficiency of the evidence, remand is proper . . .").  This is because appellate courts lack the institutional competence to review facts as they must base their factual determinations solely on a cold record; a properly instructed jury, however, may take into account such intangibles as courtroom atmosphere and witness demeanor.  See In re Clay, 35 F.3d 190, 194 (5th Cir. 1994) ("[A] cold record cannot capture the atmosphere, the expressions, the attitudes that are the marrow of a jury trial."); Caldarera v. Eastern Airlines, Inc., 705 F.2d 778, 782 (5th Cir. 1983) ("Our review is not only hindsight, but is based on a written record with no ability to assess the impact of the statement on the jury or to sense the atmosphere of the courtroom.").  Since the jury verdict is being reversed due to an erroneous jury instruction and not due to insufficient evidence, a full remand for a new trial as to both liability and damages is the only appropriate remedy.

While it may be true, as the majority points out, that the parties may be able to agree to a settlement on the issue of damages, such possibility should not influence the proper procedure this court should employ. Rather, keeping with circuit precedent, I believe that remand of the case for a new trial on the issues of liability, compensatory damages and liquidated damages is necessary so that a properly instructed jury may determine whether the employees were in fact paid an hourly wage or a day-wage. It is not the province of this court to replace the fact-finding function of a properly instructed jury. If such jury determines that the employees were paid hourly, then Dr. Pepper violated the FLSA; if it determines the employees were paid daily, then Dr. Pepper did not violate the FLSA. Since the present case turns on precisely this issue, I do not believe it appropriate for this court to express an opinion on the issue, and I feel that any such expression is mere *dicta*. Any such *dicta* notwithstanding, I find nothing in the majority opinion limiting the ability of the jury on remand to determine whether the employees were in fact paid daily or hourly. I thus concur.