**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-21195

MARCOS AVILA; FABIANA AVILA

Plaintiffs-Appellants,

v.

MILLENNIUM PETROCHEMICALS, INC.

Defendant-Appellee.

- - - - - - - - - -
Appeal from the United States District
Court for the Southern District of Texas
(H-98-1033)
- - - - - - - - - -
February 12, 2001

Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

The appeal of this workplace injury case is before us on diversity jurisdiction. After receiving an adverse judgment based on a jury verdict, Plaintiffs-Appellants Marcos and Fabiana Avila ("the Avilas") appealed, asking us to reverse and remand for a new trial. They base their appeal on the contention that the district court's instructions to the jury were fatally flawed. The Avilas

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

argue that the jury instructions, particularly the first interrogatory, do not properly convey the issue that the jury was to decide: Whether Defendant-Appellee Millennium Petrochemicals, Inc. ("Millennium") retained supervisory control over the industrial construction work of an independent contractor for which Marcos was working when he was injured. We conclude that the district court's instructions provided the jury with sufficient guidance on the factual determination they were to make and therefore affirm that court's judgment based on the jury's verdict.

## I. Facts and Proceedings

Millennium owns and operates a petrochemical plant at La Porte, Texas. When one of the furnaces at that plant ceased to function properly, Millennium decided to retube it. For that task, Millennium retained the services of a number of independent contractors, including Anderson Industrial Scaffolding Services, Inc. ("Anderson"), an independent contractor already on stand-by with Millennium pursuant to a pre-existing year-to-year contract. In that contract, Anderson had agreed to perform work for Millennium on request, when and as needed.

Marcos Avila ("Marcos") was employed by Anderson as part of a crew assigned to erect scaffolding and remove insulation around the Millennium furnace so that workers for other contractors could perform additional work on it, on the completion of which another crew would return to re-insulate the furnace and remove the scaffolding. Marcos's assignment was to remove an outer layer of

2

sheet metal, remove and roll up the old fiberglass insulation, and place it in large plastic bags. Scaffolding had been placed at each level of the furnace, and, like the other Anderson workers on his crew, Marcos was required to use a safety harness attached to the scaffold overhead at all times.

Marcos testified that on the occasion in question he untied his safety harness during the course of moving a bag of insulation —— a task that he claims he could not have performed while remaining tied off. While his harness was untied, Marcos lost his balance and fell through an opening in the scaffolding, landing on the level below and sustaining serious injuries. Marcos stated that he was rising from a squatting position when he hit his head on an overhead beam, lost his balance, and fell through an open area on Level 4 of the scaffolding at a point where boarding had not yet been laid down.

The Avilas brought suit against Millennium, contending that the company was responsible for Marcos's fall because it had negligently exercised supervisory control over the work performed by Anderson's employees. The Avilas assign as negligence Anderson's failure to have boarding in place on the scaffolding while the old insulation was being removed, contending that Marcos's fall would have been prevented if the boarding had already been laid down on the scaffolding. This, according to the Avilas, made Millennium liable for failure to maintain a safe workplace.

The jury found for Millennium, answering negatively the first

3

interrogatory, which asked the jury:

> Do you find from the preponderance of the evidence that on July 16, 1997 at a petrochemical plant that it owned at 1515 Miller Cut-Off Road in La Porte, Texas, Millennium Petrochemicals, Inc. had retained the right of control over Anderson Industrial Services, Inc. employees' work to remove insulation on level 4 of Furnace 8?

The district court then entered final judgment in favor of Millennium and ordered the Avilas to pay costs. The Avilas timely filed a notice of appeal.

## II. Analysis

### A. Standard of Review

When we review a timely objection to the district court's jury instructions we must determine whether the appellant has demonstrated "that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations"[1]; but "even if the jury instructions were erroneous, we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case."[2]

### B. The Jury Instruction

A premises owner generally has no duty to ensure that an independent contractor performs the work it is hired to do in a

---

[1] Hartsell v. Dr. Pepper Bottling Co., 207 F.3d 269, 272 (5th Cir. 2000) (quoting Johnson v. Sawyer, 120 F.3d 1307, 1315 (5th Cir.1997) (internal citation and quotation marks omitted)).

[2] Id.

safe manner, and thus is typically not liable for injury or damage resulting from an unsafe performance by the contractor. Texas law recognizes an exception to this general rule, however, for any premises owner "who entrusts work to an independent contractor, but who retains the control of any part of the work."[3] In such a case the employer is "subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."[4] The supervisory control exercised "must relate to the activity that actually caused the injury."[5]

The sole issue on appeal here is whether the instruction with which the jury was charged, particularly the first interrogatory, sufficiently informed the jury of the determination it was to make, i.e., whether Millennium exercised supervisory control over the work performed by Anderson's employees that Marcos claims caused his fall.[6] The Avilas assert that the district court committed

---

[3] <u>Redinger v. Living, Inc.</u>, 689 S.W.2d 415, 418 (Tex. 1985) (citing Restatement (Second) of Torts § 414 (1977)).

[4] <u>Id.</u>

[5] <u>Coastal Marine Serv. of Texas v. Lawrence</u>, 988 S.W.2d 223, 226 (Tex. 1999).

[6] The instruction accompanying the first interrogatory generally informed the jury that a premises owner/ operator (Millennium) owes no duty to the employees of an independent contractor (Marcos) unless the owner/operator retains supervisory control over the part of the independent contractor's work on the premises that actually caused the injury, to such a degree that the control includes at the least the right to control the order in which the work is to be done or the right to ensure that the work

5

reversible error by refusing to include the words "and lay down boarding" after "to remove insulation" in the first interrogatory. The Avilas argue that removal of the insulation was a separate job from that of laying down the boarding on the scaffolding; that it was not a lesser included facet of the overall insulation removal project. As such, contend the Avilas, the interrogatory formulated and given to the jury obfuscated the issue that it was to decide, namely whether Millennium exercised control over installation of the boarding on the scaffolding — specifically, the decision not to lay down boarding on the scaffolding prior to removal of the old insulation — the specific "part of the work" that the Avilas allege caused the accident. In essence, the Avilas argue that the interrogatory was too narrowly focused on insulation removal alone and did not instruct or permit the jury to address Millennium's supervisory role in the laying down of the boards on the scaffolding.

Millennium contends, in contrast, that Anderson was initially employed to remove the old insulation on the furnace and that, like removing and bagging the old insulation, both erecting the scaffolding and laying down the boards were integral sub-parts of that entire job and thus were lesser included facets of the overall insulation removal project. Thus, insists Millennium, the first interrogatory's focus on removal of insulation covered not just the

_____

is not performed in an unsafe manner.

taking off and bagging of the old insulation but all facets of that job, including erecting the scaffolding, removing and bagging the old insulation, and laying down the boards. Millennium also points out that the purpose for which the boards were to be laid down was not to provide an additional safety feature for the protection of those of Anderson's employees who, like Marcos, were to ascend and work on the scaffolding while removing the old insulation. Rather, advances Millennium, the boarding was to be installed for the subsequent use of another group of workers, namely, the welders, whose performance would not commence until the insulation removal job had been completed. Moreover, continues Millennium, the primary purpose of the boards was not to serve as safety features for the welders but as surfaces on which to place their welding equipment while they welded on the furnace.

Regardless of which party's analysis of the job and its description might ultimately prove to be correct, the Avilas' claim is unavailing under the facts presented to the jury, as reflected by the record as a whole. If, as Millennium contends, the insulation removal job that Anderson was retained to perform necessarily included installation of the boards on the scaffolding as an integral part of the contract, then "laying down boarding," like erecting the scaffolding, was implicitly included in the total task which would be "to remove insulation." That would make the first interrogatory all-inclusive and accurate. But if, as the Avilas urge, installation of the boards was distinct from the task

7

of removing insulation, the board installation was related only to a subsequent task to be performed by the welders, providing a place for them to put their welding equipment and supplies. If the Avilas are correct about the two distinct operations, then by definition the task of installing boards for the welders was not part of removing the old insulation, the work to which Marcos's task was limited. Even if, in this latter alternative, Millennium has assumed control of laying down the boards, it would have had no duty to Marcos to place boarding on the scaffolding prior to his performing the insulation removal tasks assigned to him. Such a duty would run only to the welders, and even then vis-à-vis their equipment and not their safety. Consequently, scaffolding and harnesses were the only safety features on which Marcos and the other employees who worked to remove the old insulation were meant to rely. And if, as found by the jury, Millennium had not retained control over Anderson's employees' work on the insulation removal job, then Millennium would have owed no duty and had no liability to Marcos.

### III. Conclusion

Given the state of the entire record, either theory of the case advanced by the parties makes the first interrogatory sufficient as to the issue to be decided by the jury. Laying down boarding on the scaffolding was, like erecting the scaffolding, either (1) a safety-related task inherent in the larger job of removing the insulation, a job for which the jury found Millennium

8

had not assumed supervisory responsibility, or (2) an unrelated, subsequent task to be performed for the benefit of the welders and therefore not a safety feature on which Marcos and other similarly situated employees of Anderson were entitled to rely to prevent falls such as the one suffered by Marcos.  It follows that, either way, the wording of the interrogatory satisfactorily captured the question the jury was to decide, i.e., whether Millennium exercised supervisory control over the work, and thus the safety decisions, involved in the job comprising Anderson's ⸺ and therefore Marcos's ⸺ participation in the removal of the insulation.  The omission of specific reference to laying down boarding, in addition to reference to removal of insulation, was not error.  Therefore, the judgment of the district court is, in all respects,

AFFIRMED.