**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 00-50115
_____


ELAINE GREGORIUS, Individually
and in her capacity as Executrix and
Representative of the Estate of
Hans Gregorius, and
ELIZABETH GREGORIUS,

                                        Plaintiffs-Appellants,

versus

F.E. SEALE,[*] M.D., Individually, Et Al,

                                              Defendants.

STARLITE VILLAGE HOSPITAL, INC., HOLLIE
RAMIREZ, CHARLOTTE RICKARD, also known as
Charlotte Richard; and DEBRA NICHOLS,

                                     Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Texas
(SA-96-CV-331-HG)
_____
April 25, 2001

Before WIENER, STEWART, Circuit Judges, and SMITH,[**] District Judge.

_____

    [*]Although spelled "Seal" in plaintiffs' complaints and the district court docket sheet, the defendants' answer and the transcript reflect that the actual spelling is "Seale."

    [**]Walter S. Smith, Jr., District Judge for the Western District of Texas sitting by designation.

PER CURIAM[***]:

Appellants, the surviving family of Dr. Hans Gregorius ("Gregorius"), bring this wrongful death/survivor action against defendants as a result of Gregorius's death while a patient at Starlite Village Hospital ("Starlite"). The jury returned a verdict in favor of the defendants, which gives rise to the present appeal.

FACTUAL AND PROCEDURAL HISTORY

Gregorius was a licensed psychiatrist who suffered from an addiction to alcohol and Valium. In 1992, he was voluntarily admitted to Starlite for treatment of his addictions and was successfully discharged approximately one month later. After a relapse, Gregorius again admitted himself to Starlite on June 10, 1994.

Starlite is an "open" treatment facility that primarily provides treatment for substance abuse and chemical dependency. It is an open and voluntary facility licensed by the Texas Commission on Alcohol and Drug Abuse and the Texas Department of Health. Starlite engages to treat addicted patients in the least restrictive manner possible, and recognizes both a patient's right to refuse treatment and a patient's involvement and participation in his treatment.

---

[***]Pursuant to 5TH Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH Cir. R. 47.5.4.

Gregorius's primary treatment during both commitments was provided by Dr. F.E. Seale ("Dr. Seale"). Dr. Seale had treated addicted patients for a number of years and had authored numerous articles regarding withdrawal patterns and treatment of cross-addicted patients. His articles, as well as other expert testimony, indicate that patients addicted to Valium are susceptible to life-threatening seizures during withdrawal. The critical period for the occurrence of such seizures is approximately seven to ten days after withdrawal. Those addicted to alcohol are most susceptible to hallucinations immediately after withdrawal from alcohol.

During the first six days of treatment, Gregorius received Phenobarbital, an anti-seizure medication. This medication was discontinued, and no further anti-seizure medications were prescribed or administered, even though Gregorius was approaching the critical stage in his withdrawal treatment. Gregorius did receive Thorazine, to address his hallucinations, and Artane, to prevent the side effects of Thorazine. Gregorius participated in his own treatment plan, requesting some medications and refusing others. Gregorius requested both the Thorazine and the Artane but refused two anti-seizure medications, Tegretol and Dilantin, because of their side effects.

Although Gregorius initially progressed well, his condition started to deteriorate on June 20 when he began experiencing intermittent hallucinations. Because of this, one of the charge

3

nurses moved Gregorius from the psychiatric ward back to the detoxification ward. Another nurse requested that Gregorius be placed on "Q-15" watch, which required that he be observed every fifteen minutes throughout the day and night. Gregorius agreed to the Q-15 observation, but refused to be placed on one to one observation because it was too restrictive. One to one observation requires that a staff member be within arms' length of a patient at all times.

On the 21st, Gregorius left a group meeting unnoticed, some time between 1:30 and 1:50 p.m. He left the building undetected and unescorted. His absence was noticed within a few minutes, and a search was initiated. Several hours later, Gregorius was found at the bottom of a steep hill not far from the hospital. His shoes were neatly laid side by side, and his shirt was folded and placed over his shoes. When discovered, Gregorius was in the midst of a major seizure. He later died at a nearby hospital. A subsequent autopsy listed his death as due to a seizure disorder, while the defendants' expert testified that the cause of Gregorius's death was heat stroke.

Appellants filed suit against Starlite and various hospital personnel asserting medical malpractice. Appellants contended that Starlite was liable in one instance for failing to ensure that its premises were safe. They contended that the lack of a fence led Gregorius to fall down the steep hill, thereby leading to his death. At the close of the plaintiffs' case, the district court

4

granted Starlite's motion for judgment as a matter of law on the premises liability claim. In conformity with the jury's verdict, the district court entered a take-nothing judgment. Appellants then filed a motion for new trial, which was denied by the district court.

## ISSUES

Appellants raise three issues:

(1) Did the district court err in refusing the standard of care instruction proffered by the plaintiffs?

(2) Did the district court err in granting defendants' motion for judgment as a matter of law on plaintiffs' premises liability claim? and

(3) Did the district court err in excluding from the jury charge plaintiffs' contentions relating to Starlite's breach of its duty?

## STANDARD OF REVIEW

Challenges to jury instructions are reviewed for abuse of discretion. <u>Battle v. Memorial Hosp. at Gulfport</u>, 228 F.3d 544, 555 (5th Cir. 2000). If a challenge to an instruction is properly preserved, the challenger must establish the following to obtain reversal of a judgment:

> First, the challenger must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its

5

> deliberations. Second, even if the jury instructions were erroneous, we will not reverse if we determined, based upon the entire record, that the challenged instruction could not have affected the outcome of the case.

Johnson v. Sawyer, 120 F.3d 1307, 1315 (5th Cir. 1997) (internal citation and quotation remarks omitted). If the issue is not properly preserved, review is only for plain error. Hartsell v. Dr. Pepper Bottling Co. of Tex., 207 F.3d 269 (5th Cir. 2000).

A district court's decision to grant a judgment as a matter of law is reviewed de novo. Serna v. City of San Antonio, ___ F.3d ___, 2001 WL 237241 (5th Cir. 2001); Russell v. McKinney Hospital Venture, 235 F.3d 219, 222 (5th Cir. 2000). Judgment as a matter of law is appropriate when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a). All evidence in the record is reviewed, and all reasonable inferences are drawn in favor of the non-movant. Serna v. City of San Antonio, 2001 WL at 2. In making the de novo review, the Court may not "make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000).

## DISCUSSION

The record does not support appellants' contention that a proper objection was made to the failure to include in the court's charge their "contentions" relating to Starlite's breach of a duty owed to Gregorius. Under Rule 51 of the Federal Rules of Civil

6

Procedure, a party must state distinctly the matter objected to and the grounds for the objection before the jury retires to consider its verdict. A party does not satisfy Rule 51 "by merely submitting a proposed instruction that differs from that ultimately given." Hartsell, 207 F.3d at 273. Failure to make a proper objection may be excused "when a party's position equating to an objection has previously been made clear to the trial judge, and further objection would be unavailing." Id. The record does not contain facts to make this exception applicable. Therefore, review of this issue is under the plain error standard.

If an issue is not properly preserved, in order to prevail on appeal, the appellant must show:

> (1) that an error occurred; (2) that the error was plain, which means clear or obvious; (3) the plain error must affect substantial rights; and (4) not correcting the error would "seriously affect the fairness, integrity or public reputation of judicial proceedings."

Highlands Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh, 27 F.3d 1027, 1032 (5th Cir. 1994), citing United States v. Olano, 507 U.S. 725, ___, 113 S.Ct. 1770, 1779, 123 L. Ed. 2d 508 (1993). The trial court's instructions, as a whole, were not plainly erroneous.

Appellants did make specific and timely objections to the trial court's failure to include their definition of "ordinary care." The definition given by the court was as follows:

> "Ordinary care" when used with respect to the conduct of the actor under consideration, means that degree of care that an actor of ordinary prudence would use under the

7

same or similar circumstances, as the patient's condition, as it is known to be, may require.

The definition requested by appellants consisted of the following:

"Ordinary care," with respect to the conduct of Starlite Village Hospital means that degree of care that a hospital of ordinary prudence would use under the same or similar circumstances, as the patient's condition, as it is known to be, may require, including safeguarding and protecting the patient from any known or reasonably apparent danger from himself that may arise from his known mental or physical incapacity.

The appellants' definition is a modified version of that included in a comment to 50.2 of the Texas Pattern Jury Charges ("TPJC"). As the comment makes clear, such an instruction is optional rather than mandatory. As the trial court's definition was a correct statement of the law, Appellants have failed to establish that the charge as a whole created substantial and ineradicable doubt whether the jury had been properly guided in its deliberations.

Even assuming the trial court's definition was erroneous, appellants have failed to establish that the definition given could have affected the outcome of the case, based upon a review of the entire record. Although appellants point to what they assert was inappropriate care, the record reflects equally that Gregorius was provided appropriate care in keeping with the open and voluntary nature of the hospital and the patient's right to refuse treatment.

Finally, there was no error in the trial court's decision to grant judgment as a matter of law on appellants' premises liability claim. A review of the entire record reflects that plaintiffs failed to present any evidence that any condition of the hospital

8

premises was a proximate cause of Gregorius's death.  As the Texas Supreme Court has noted in an analogous case, "Property does not cause injury if it does no more than furnish the condition that makes the injury possible."  <u>Dallas County Mental Health & Mental Retardation v. Bossley</u>, 968 S.W.2d 339, 343 (Tex. 1998).  The premises defects identified by appellants were too attenuated to constitute the instrumentalities causing Gregorius's injuries.  Accordingly, the Judgment of the district court is

**AFFIRMED**.