# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 11, 2022

Lyle W. Cayce
Clerk

No. 20-40581

Akia Stanton,

*Plaintiff—Appellee*,

*versus*

Jarvis Christian College,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:18-CV-479

Before Owen, *Chief Judge*, and Clement and Higginson, *Circuit Judges*.

Per Curiam:*

Akia Stanton was the head women's basketball coach at Jarvis Christian College until the college fired her in June of 2018. She sued, and her Family and Medical Leave Act (FMLA) claims went to a jury, which found in her favor and awarded her $12,500 in compensatory damages. After

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-40581

the jury returned its verdict, the college filed a post-trial motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) or, alternatively, for a new trial under Rule 59. The district court denied the motion and the college appealed, challenging the sufficiency of Stanton's evidence and several jury instructions. For the following reasons, we AFFIRM.

## I.

Stanton's FMLA claims derive from events spanning a few weeks in the summer of 2018.[1] Stanton, like other employees, was required to help with the college's student recruitment efforts during the summer. Frustrated with the staff's (lack of) productivity on that front, the President of Jarvis called an all-hands meeting at which he threatened to terminate employees for absenteeism. This coincided with a worsening of Stanton's anxiety and depression; she was suffering panic attacks, chest and stomach pains, and had bouts of uncontrollable crying at work. Stanton scheduled an appointment with a nurse practitioner who, after evaluating her for anxiety and depression, referred her for psychiatric treatment, prescribed medication, and wrote a note on her behalf excusing her from work from June 8 to June 25.

Jarvis's Director of Human Resources was not satisfied with the note, so she emailed Stanton an FMLA medical certification form for the provider to complete. Stanton sent it to the nurse practitioner promptly, who completed it and faxed it back to Jarvis later the same day. On the form, the nurse indicated Stanton's conditions as "anxiety" and "depression," that she had been prescribed medication, and that she was referred to "psych,"

---

[1] Stanton also sued under Title VII, 42 U.S.C. § 2000e-2(a), and the common law. The district court dismissed or entered summary judgment for Jarvis on those counts, and Stanton did not appeal.

No. 20-40581

which would determine the nature and duration of future treatments. The HR Director was still not satisfied, though. The nurse practitioner had indicated that the answers to certain questions were "unknown" and would need to be determined by a psychiatrist. On June 21, the HR Director told Stanton that, within seven days, the nurse practitioner needed to provide specifics "in the areas where she answered the questions by stating 'unknown,' 'as determined by,' and/or 'to be determined by.'" On the seventh day, Stanton emailed back that she had "notified" her doctor of "the 7 day request," and that they were working together to "ensure [HR would] receive the proper information."

In the meantime, a security video taken on June 15 had recorded Stanton removing various items from her office and loading them into her car. The video showed Stanton taking chairs, a couch, athletic and teaching equipment, and various boxes. As the district court summarized the trial evidence, the ownership of the items was "hotly disputed" at trial. Jarvis's athletic director testified that at least some of the items belonged to the college. Stanton testified that everything she removed was her own property. "Jarvis reported the incident to law enforcement on June 19, but testimony at trial established that the case was subsequently closed due to lack of prosecutable evidence."

On June 29, the day after Stanton responded that she was working to provide a corrected certification form, Jarvis denied Stanton's FMLA leave and terminated her. The college's theory of the case was that Stanton had already secured a coaching position at another college out of state, and that her FMLA leave was a sham. Stanton argued that the college fired her for exercising her right to FMLA leave. The jury found for Stanton and awarded her $12,500 in damages.

No. 20-40581

## II.

We first consider the sufficiency of the evidence. Ordinarily, we review sufficiency de novo. *Duvall v. Dallas Cnty.*, 631 F.3d 203, 206 (5th Cir. 2011) (per curiam). But if the defendant fails to move for judgment as a matter of law "before the case is submitted to the jury," our review is for plain error. Fed. R. Civ. P. 50(a)(2); *McKenzie v. Lee*, 259 F.3d 372, 374 (5th Cir. 2001) (per curiam). Here, the district court found that Jarvis had failed to do so.

We recognize certain exceptions to the strict requirements of Rule 50 when the "purposes of the rule are satisfied." *Scottish Heritable Tr., PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 610 (5th Cir. 1996).

> As we have often recited, the two basic purposes of this rule are to enable the trial court to re-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant, and to alert the opposing party to the insufficiency before the case is submitted to the jury.

*Id.* (internal quotation and citation omitted).

For instance, we have recognized that an "objection to proposed jury instructions on grounds pertaining to the sufficiency of evidence issues it seeks to appeal may satisfy these purposes." *Id.* (citations omitted). And although we are dubious of Jarvis's suggestion that it raised a Rule 50(a) motion *per se*, the record certainly reflects its objection on those grounds. Even so, the district court's finding that Jarvis deprived Stanton of "an opportunity to cure any claimed insufficiency before the case was submitted to the jury" might have been significant.

Yet, we have also said that a nonmoving party's "fail[ure] to raise this forfeiture claim in opposition to the Rule 50(b) motion . . . precludes raising

the forfeiture claim on appeal." *Arsement v. Spinnaker Expl. Co.*, 400 F.3d 238, 247 (5th Cir. 2005) (citing *Thompson & Wallace of Memphis, Inc. v. Falconwood Corp.*, 100 F.3d 429, 435 (5th Cir. 1996); *Horton v. Bank One, N.A.,* 387 F.3d 426, 435 (5th Cir. 2004)). Stanton did not object; indeed, in her opposition to Jarvis's Rule 50(b) motion she expressed her understanding that Jarvis had "orally moved the Court for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a)(2), which the Court denied."

Rather than rush headlong into this *sui generis* exception-to-an-exception, we merely assume without deciding that Jarvis preserved its challenge and proceed de novo. Accordingly, judgment as a matter of law is appropriate only if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1); *see WickFire, L.L.C. v. Woodruff*, 989 F.3d 343, 352 (5th Cir. 2021), *as revised* (Mar. 2, 2021). We "draw all reasonable inferences and resolve all credibility determinations" in Stanton's favor. *Cowart v. Erwin*, 837 F.3d 444, 450 (5th Cir. 2016).

Jarvis renews the arguments it made to the district court that Stanton failed to present evidence that she: (1) was covered by the FMLA, (2) cured deficiencies in her medical certification form, or (3) suffered harm from any alleged violation. Like the district court, we find that the jury had "a legally sufficient evidentiary basis" to find for Stanton on these issues. Fed. R. Civ. P. 50(a)(1).

The crux of Jarvis's argument is that the nurse practitioner's referral of Stanton for further psychiatric evaluation rendered the certification inadequate. But Jarvis's cited authority involves medical professionals who said the opposite of the nurse practitioner here. In *Boyd v. State Farm Insurance Companies*, physicians testified that the plaintiff "was not incapacitated within the meaning of the Act." 158 F.3d 326, 331 (5th Cir.

1998). And in *Comeaux-Bisor v. YMCA of Greater Houston*, the plaintiff's medical certification form inadequately said that she "was able to work and would require only routine prenatal care" during her pregnancy. 290 F. App'x 722, 725 (5th Cir. 2008) (per curiam). Stanton's nurse certified and testified to the opposite.

Contrary to Jarvis's suggestion that Stanton did not suffer "a serious health condition that makes the employee unable to perform the functions of [her] position," 29 U.S.C. § 2612(a)(1)(D), the district court catalogued "substantial evidence" adduced at trial and ignored by Jarvis. The nurse practitioner who evaluated Stanton and certified her medical form wrote that Stanton's anxiety and depression could cause "episodic flare-ups periodically preventing the employee from performing [her] job functions," that she prescribed medication, and that Stanton would need time off for a psychiatric appointment. The nurse also testified that Stanton presented at her evaluation with symptoms consistent with those diagnoses, and that she would not have certified the form otherwise. Moreover, Stanton herself testified that her anxiety and depression had been worsening at work, that she was suffering chest and stomach pains, that she had been crying at work, and that she sought medical treatment as a result.

Similarly, we see no obvious deficiency in the form here. *See Urban v. Dolgencorp, Inc.*, 393 F.3d 572, 574 (5th Cir. 2004) (citing 29 U.S.C. § 2613(b)) (listing requirements), *clarified on denial of reh'g*, 398 F.3d 699 (5th Cir. 2005). The uncertain prognosis was the "probable duration of the condition," 29 U.S.C. § 2613(b)(2), but even that is misleading because the nurse practitioner informed Jarvis how long Stanton would need to be absent from work. Moreover, we agree with the district court's assessment that "the evidence at trial showed that Stanton was attempting to cure any problems when Jarvis denied her leave request and fired her." *See* 29 C.F.R. § 825.305(c) ("The employer must provide the employee with seven

calendar days (unless not practicable under the particular circumstances *despite the employee's diligent good faith efforts*) to cure any such deficiency." (emphasis added)). "We interpret the FMLA as a statute that requires cooperation from the employer *and* employee. After all, the ultimate underlying purpose of the FMLA is to accommodate a particular medical circumstance." *Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 582 (5th Cir. 2006) (footnote omitted). The jury had an adequate basis to find that Jarvis failed to live up to its end of that bargain.

Nor are we convinced by Jarvis's suggestion that Stanton suffered no harm. We have long recognized termination as harm in retaliation cases, *e.g.*, *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 391, 393 (5th Cir. 2013), and at least two sister circuits have "recognized that employees can show that an employer interfered with their attempts to use FMLA leave by firing them," *Perkins v. Child Care Assocs.*, 751 F. App'x 469, 476 (5th Cir. 2018) (per curiam) (citing *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009)); *see Lovland v. Emps. Mut. Cas. Co.*, 674 F.3d 806, 811 (8th Cir. 2012) ("[W]e have limited 'interference' claims . . . to situations where the employee proves that the employer denied a benefit to which she was entitled under the FMLA, which include terminating an employee while on FMLA leave." (citation omitted)). This is consistent with Stanton's claim that she would have returned to work had she known Jarvis would deny her FMLA claim. On these facts, the jury had sufficient evidence to find for Stanton on her interference and retaliation claims.

## III.

Next, we address Jarvis's argument that the district court declined to give two necessary jury instructions. Jarvis requested one instruction based on the regulation saying that Jarvis was entitled to deny Stanton's FMLA

leave if she did not cure her medical certification. And it requested another informing the jury that it must find harm for the interference claim.

When a district court refuses to issue a requested jury instruction, we review for abuse of discretion. *Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1113 (5th Cir. 2021) (citations omitted).

> Recognizing that district courts have substantial latitude in crafting jury instructions, the district court's refusal to give a requested jury instruction constitutes reversible error only if the [requested] instruction 1) was a substantially correct statement of law, 2) was not substantially covered in the charge as a whole, and 3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the [party's] ability to present a given [claim].

*Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 578 (5th Cir. 2004) (internal quotation and citation omitted) (second and third brackets in original).

Jarvis's argument falls on prong two. At the charge conference, the district court sought input from both parties to properly and concisely guide the jury. The court found that the "pattern instruction I think very nicely simplifies everything, and the reason why I don't want to include a bunch of information on the regulations is because we would lose that simplicity. I think that is why the pattern charge doesn't include that either." The court was even-handed in this regard, declining to add some of Stanton's requested instructions for the same reason. Reviewing the charge as a whole, the district court correctly instructed the jury that Stanton bore the burden of proving that she had a "serious health condition," and that Jarvis "interfered with, restrained, or denied" her entitlements under the FMLA. That charge

"substantially covered" the correct legal standard, including Jarvis's concerns about Stanton's burden. *See id.*

IV.

Finally, we turn to a more vexing question: the standard of causation in FMLA retaliation cases. In *Richardson v. Monitronics International, Inc.*, we held that the mixed-motive framework applies in "appropriate cases"—namely, those in which there is evidence that both permissible and impermissible motives played a part in the challenged employment decision. 434 F.3d 327, 332–33 (5th Cir. 2005); *see also Adams v. Mem'l Hermann*, 973 F.3d 343, 353–54 (5th Cir. 2020). Jarvis argues that two Supreme Court decisions require us to reconsider *Richardson* and hold that FMLA plaintiffs prosecuting retaliation claims must establish "but-for" causation.

In *Gross v. FBL Financial Services*, the Supreme Court interpreted the ADEA's private-sector provision, which makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age." 557 U.S. 167, 176 (2009) (quoting 29 U.S.C. § 623(a)(1)). The Court interpreted § 623(a)(1)'s "because of" language to mean that age must have been "the 'reason' that the employer decided to act." *Id.* The implication, it concluded, was that an ADEA plaintiff bringing a claim under § 623(a)(1) must prove that age was the "but-for" cause of the employer's adverse decision. *Id.* at 176–77.

Then, in *University of Texas Southwestern Medical Center. v. Nassar*, the Supreme Court interpreted one of Title VII's antiretaliation provisions, which provides, *inter alia*: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this

subchapter . . . ." 570 U.S. 338, 352 (2013) (quoting 42 U.S.C. § 2000e-3(a)) (emphasis added). Against the backdrop of the default rule in tort cases, which provides that "but-for" causation applies absent an indication to the contrary in the statute, the Court compared § 2000e-3(a) to § 623(a)(1)— the ADEA provision considered in *Gross*. *Id.* It determined that there were no meaningful textual differences between the two, relying heavily on the fact that, like § 623(a)(1) of the ADEA, § 2000e-3(a) of Title VII includes the word "because," which signals "but-for" causation. *Id.* Accordingly, it held that Title VII plaintiffs bringing retaliation claims under § 2000e-3(a) must show that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 360.

We historically have declined to address the impact of *Gross* and *Nassar* on our *Richardson* mixed-motive holding. In *Ion*, for example, we expressly declined to do so because "the parties briefed, argued, and [did not] contest resolution of [the] case under the mixed-motive rubric." 731 F.3d at 390. Thus, we did not "decide whether *Nassar*'s analytical approach applies to FMLA-retaliation claims and, if so, whether it requires a plaintiff to prove but-for causation." *Id.* Similarly, in *Harrelson v. Lufkin Industries*, "the mixed-motive argument [was] not at issue" because the parties did not argue "that the court should apply the but-for standard articulated in [*Nassar*]." 614 F. App'x 761, 763 n.3 (5th Cir. 2015) (per curiam). Once again, we said that "we need not address *Nassar*'s effect, if any, on FMLA retaliation claims." *Id.*

In *Castay v. Ochsner Clinic Foundation*, that posture altered when an employer *did* argue for extending *Nassar* to the FMLA retaliation framework. 604 F. App'x 355, 356 n.2 (5th Cir. 2015) (per curiam). Even so, "we conclude[d] that th[e] case d[id] not turn on this distinction and le[ft] the determination of *Nassar*'s potential applicability to FMLA retaliation claims to another case." *Id.*

No. 20-40581

The following year we noted again that "[n]either this Court, nor the Supreme Court, has decided whether the heightened 'but for' causation standard required for Title VII retaliation claims applies with equal force to FMLA retaliation claims." *Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 706 (5th Cir. 2016). But we found the question to be "largely immaterial" because the case turned on a different question. *Id.* Similarly, in *Trautman v. Time Warner Cable*, we found that "even applying the mixed-motive framework," the plaintiff could not "establish that her FMLA-protected leave was a motivating factor" in her employer's decision to fire her. 756 F. App'x 421, 428 n.5 (5th Cir. 2018) (per curiam). Once again, we declined to consider "whether the mixed-motive framework remains a viable method to establish FMLA-retaliation claims" after *Nassar* and *Gross*. *Id.*

Our strongest and most recent statement casting doubt on *Richardson*'s continued viability came last year in *Adams*. There, we asserted in dicta that "*Richardon*'s viability (and, along with it, the Department of Labor's regulatory interpretation) are dubious in light of the Supreme Court's more recent decisions in *Nassar* and *Gross*[.]" *Adams*, 973 F.3d at 353. Even still, we did not "confront th[e] question directly"; we determined that "*Richardson* does not categorically foreclose the use of the but-for causation standard for FMLA retaliation claims" when there is no evidence of mixed motives. *Id.* at 353–54. However, we also cautioned against blindly applying *Gross* and *Nassar* to the FMLA, given that "the statutory language in the FMLA is not identical to the relevant portions of the ADEA or Title VII." *Id.* at 353 (footnote omitted).

Jarvis argues that the "but-for" holdings in *Gross* and *Nassar* apply with equal force to the FMLA. But this oversimplifies the issue. First, Jarvis's suggestion that we can simply graft *Gross* and *Nassar* onto the FMLA ignores the fact that *Gross* and *Nassar* interpreted provisions of *different* statutes with *different* language than the FMLA provision at issue here.

11

No. 20-40581

Indeed, there is significant disagreement amongst the circuits—including ours—about the particular FMLA provision that authorizes retaliation claims in the first place.[2]  Second, and relatedly, a holding that "but-for" causation applies in all FMLA retaliation cases—as Jarvis urges—would be in tension with our *Richardson* jurisprudence, as well as FMLA jurisprudence from at least two of our sister circuits.[3]

---

[2] Some conclude that the right flows from 29 U.S.C. § 2615(a)(1), which makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  The First, Second, Third, and Ninth Circuits hold this view.  *See, e.g.*, *Egan v. Del. River Port Auth.*, 851 F.3d 263, 269–74 (3d Cir. 2017); *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 167 (2d Cir. 2017); *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124–25 (9th Cir. 2001); *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 160 n.4 (1st Cir. 1998).  Others reason that it derives from § 2615(a)(2), which "makes it unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  The Fourth, Sixth, and Eighth Circuits hold this view.  *See, e.g.*, *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 245 (4th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 732 (May 3, 2021); *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006); *Bryant v. Dollar Gen. Corp.*, 538 F.3d 394, 400 (6th Cir. 2008); *Lovland*, 674 F.3d at 810–12 (8th Cir. 2012); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050–51 (8th Cir. 2006).

The Fifth Circuit has traditionally taken the latter view.  *See, e.g.*, *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 834 & n.3 (5th Cir. 2020) (collecting cases); *see also Haley v. All. Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004) (holding that "claims for violations of [prescriptive or substantive FMLA rights] invoke entitlement or interference theories and are brought under § 2615(a)(1)," whereas claims for violations of "proscriptive FMLA rights," including the "right not to be discriminated or retaliated against for having exercised the right to take FMLA leave . . . are brought under § 2615(a)(2)").

[3]The Second Circuit has concluded that a "motivating factor" instruction is required in FMLA retaliation cases, and that "but-for" causation is inconsistent with *Chevron* deference to the Department of Labor's regulation.  *Woods*, 864 F.3d at 168; *see also Chevron, U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837 (1984).  Similarly, the Third Circuit has concluded, also based on *Chevron* deference, that the Department of Labor's "use of a mixed-motive framework is not inconsistent with *Nassar* and *Gross*," and that the "mixed-motive approach is a permissible construction of the statute."  *Egan*, 851 F.3d at 274.

No. 20-40581

But whether and to what extent *Gross* and *Nassar* may ultimately require us to revisit *Richardson* is a question for another day.  Jarvis has not met its burden of establishing reversible error here.  We review jury instructions for abuse of discretion.  *Janvey v. Dillon Gage, Inc. of Dall.*, 856 F.3d 377, 388 (5th Cir. 2017).  "Any error is subject to harmless error review, such that we will not reverse unless the erroneous instructions affected the outcome of the case."  *Adams*, 973 F.3d at 352 (quotation omitted).  We employ this two-part test:

> First, the challenger must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations.  Second, even if the jury instructions were erroneous, we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case.

*Hartsell v. Dr. Pepper Bottling Co.*, 207 F.3d 269, 272 (5th Cir. 2000) (quoting *Johnson v. Sawyer*, 120 F.3d 1307, 1315 (5th Cir. 1997)).

As it stands, *Richardson* is the law of this circuit, which permits a mixed-motive instruction when there is evidence that both legitimate and illegitimate motives played a role in the challenged employment action.  That is exactly what the district court determined happened here.  Accordingly, the district court did not abuse its discretion in giving a mixed-motive jury instruction.

It is worth noting that the district court *also* included "but-for" language in its instruction.  Immediately following its mixed-motive instruction, the district court instructed the jury that "Stanton must prove that she would not have been terminated in the absence of her FMLA-protected activity."  This is undeniably "but-for"-like language, which

13

places a more onerous burden on the plaintiff. Despite the district court's inclusion of this language, however, the jury still found for Stanton and awarded her $12,500 in damages. In other words, even if Jarvis were correct that "but-for" causation was the appropriate standard here, it still failed to carry its burden of showing "that the challenged instruction . . . affected the outcome of the case." *See Hartsell*, 207 F.3d at 272 (quoting *Sawyer*, 120 F.3d at 1315).

Accordingly, we cannot say "that the charge as a whole create[d] substantial and ineradicable doubt whether the jury [was] properly guided in its deliberations." *See id.* (quoting *Sawyer*, 120 F.3d at 1315).

The judgment is AFFIRMED.