**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-41007.

Danny L. RUSSELL, Plaintiff-Appellant,

v.

PLANO BANK & TRUST, Defendant-Appellee.

Dec. 19, 1997.

Appeal from the United States District Court for the Eastern District of Texas.

Before KING and JONES, Circuit Judges, and WERLEIN,[*] District Judge.

KING, Circuit Judge:

Plaintiff-appellant Danny L. Russell appeals the district court's judgment, following a jury trial, in favor of defendant-appellee Plano Bank & Trust. Russell claims that the district court's jury instructions contained an incomplete definition of the term "qualified individual with a disability" within the meaning of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 (1994), which he argues was likely to have misled the jury. He therefore contends that he is entitled to a new trial. We affirm the judgment of the district court.

I. FACTUAL & PROCEDURAL BACKGROUND

Plaintiff-appellant Danny L. Russell was employed by defendant-appellee Plano Bank & Trust ("Plano Bank") from August

---

[*]District Judge of the Southern District of Texas, sitting by designation.

1

15, 1980, until his termination on October 31, 1993. Both parties agree that Russell was a valuable employee who received several promotions during his tenure at Plano Bank. In 1989, Russell received a promotion to the position of Vice-President and Special Asset Department Manager, and it is this position that he held at the time of his termination.

On August 4, 1992, Russell was involved in a motor vehicle accident that caused him to suffer neck, shoulder, and back injuries, as well as a "concussion post-late effect, also known as a brain injury." As a result of the accident, in September 1992 Russell began to experience "complex partial seizures." These seizures caused Russell to experience symptoms which included disorientation, muscle twitching in his extremities, blank staring, sensitivity to sound and light, irritability, and rage. Several weeks after the accident, Russell experienced one of these seizures while at work.

As a result of the seizures, Russell sought medical attention, and he was placed on disability leave while he underwent evaluation and treatment. During the fall of 1992, Russell began a rehabilitation program aimed at preparing him to return to work on a part-time basis. On December 15, 1992, Russell, his wife, and Dr. Richard Fulbright, Russell's treating neuropsychologist, met with Jeff Chase, Plano Bank's Executive Vice-President and Russell's supervisor, to discuss his condition and the possibility of his return to work. The parties eventually agreed that Russell could return to his job when he was capable of working for at least

four hours per day. Russell then enrolled in an intensive rehabilitation program that focused on teaching him job-related skills and allowed him to practice working on Plano Bank's own files.

The rehabilitation program discharged Russell on July 7, 1993, and he claims that as of that date he was ready and cleared by his physicians to return to work for at least four hours per day.[1] On July 10, 1993, Russell, along with his wife and his rehabilitation nurse, met with Chase and another Plano Bank representative. Chase informed Russell that Plano Bank was planning to eliminate the Special Assets Department and that he was therefore unsure whether there was a place for Russell at the bank. On August 5, 1993, Chase confirmed that he had been unable to find a position for Russell, and he offered Russell a severance package conditioned on Russell's signing a release of liability. In August 1993, Plano Bank disbanded Russell's department. Russell refused to sign the release that accompanied the severance package, and on October 26, 1993, he received a termination letter from Plano Bank stating that he was terminated as of October 31, 1993.

On May 19, 1995, Russell filed suit against Plano Bank claiming that it had violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213 (1994), by failing to reasonably accommodate him and by ultimately terminating his employment.

---

[1]Plano Bank disputes this assertion, claiming that Russell's physicians never gave him a full release to return to work and that Plano Bank's policy required such a release before it could allow him to return.

After a three-day trial, the jury returned a verdict finding that Russell was not a qualified individual with a disability. The district court therefore entered a judgment that Russell take nothing on his claims, and Russell timely appealed.

## II. DISCUSSION

*A. The Jury Instructions*

Russell argues that the district court's jury instruction contained an erroneous definition of the term "qualified individual with a disability" within the meaning of the ADA which is likely to have misled the jury. He therefore argues that he is entitled to a new trial. At trial, Russell submitted a proposed jury instruction to the district court which read, in part, as follows:

> The term "qualified individual with a disability", as used in these instructions, means an individual with a disability who can perform the essential functions of the employment position at issue, with or without reasonable accommodation.

The definition that the court ultimately gave to the jury read, in part, as follows:

> The phrase "qualified individual with a disability", as used in these instructions, means an individual with a disability who can perform the essential functions of the employment position which the Plaintiff holds or for which the Plaintiff has applied.

The next page of the instructions contained an explanation of the term "essential functions" which included the following statement:

> If a disabled employee is not able to perform the essential functions of his position, with or without reasonable accommodations, as that term is defined in these instructions, the employee can lawfully be terminated and the employer is not required to assign him to alternative employment.

Two pages later, the jury instructions defined "reasonably

4

accommodate" as follows:

> The term "reasonably accommodate" means any effective modification or adjustment to the workplace that makes it possible for a person with a disability to perform the essential functions of their employment position or to enjoy the same benefits and privileges of employment that are available to any person without a disability.

The Verdict of the Jury included a total of seven interrogatories. Interrogatory Number 1 read as follows: "Do you find from a preponderance of the evidence that Danny L. Russell was a qualified individual with a disability?" Because the jury responded negatively to this question, they did not reach any of the other interrogatories.

Russell argues that he was prejudiced by the form of the jury instructions because the words "with or without reasonable accommodation" were omitted from the definition of qualified individual with a disability. He contends that in answering Interrogatory Number 1, the jury would tend to focus on the specific definition of qualified individual with a disability and was therefore likely to ignore the discussion of reasonable accommodation which appeared in a later part of the jury instructions. In support of his argument, Russell points to the ADA's own definition of qualified individual with a disability, which reads as follows:

> The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.

42 U.S.C. § 12111(8) (1994). Russell contends that the reasonable accommodation requirement is the "heart and soul" of the ADA, and

5

he therefore argues that the district court's failure to mention reasonable accommodation in its definition of qualified individual with a disability created ineradicable doubt as to whether the jury was properly guided in its deliberations.

In response, Plano Bank first argues that because Russell failed to preserve his objection to the jury instructions, this court's consideration of his appeal is limited to plain error review. Second, Plano Bank notes that although Russell cited to § 104A.04 of the treatise *Federal Jury Practice and Instructions* as support for his proffered instruction, the language in that book is exactly the same as the language used by the district court in its definition of qualified individual with a disability. Finally, Plano Bank contends that there was no reasonable accommodation that would have permitted Russell to fulfill the essential functions of his job because (1) the accommodations that Russell requested were not reasonable, and (2) even if the requested accommodations were implemented, Russell was still not qualified for the position he sought due to his mental limitations.

*B. Standard of Review*

Where a party argues on appeal that the district court erred in refusing to give a proffered jury instruction, that party must "show as a threshold matter that the proposed instruction correctly stated the law." *Federal Deposit Ins. Corp. v. Mijalis,* 15 F.3d 1314, 1318 (5th Cir.1994). As Russell's proffered instruction tracked the language of the ADA, there is no question that it was a correct statement of the law.

6

Once that threshold is met, we generally apply a two-part test in considering a challenge to the district court's jury instructions. The party challenging the instructions must first "demonstrate that the charge as a whole creates "substantial and ineradicable doubt whether the jury has been properly guided in its deliberations.' " *Id.* (quoting *Bender v. Brumley,* 1 F.3d 271, 276 (5th Cir.1993)). Second, even where a jury instruction was erroneous, "we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case." *Id.* Moreover, in determining whether the instruction was erroneous, we accord substantial deference to the decisions of the district court. *Id.* at 1319.

A prerequisite to our review of the instructions in this manner, however, is that the objection must have been brought to the attention of the district court at trial. 9A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2553 (2d ed. 1995) ("In the absence of a properly specific objection under Rule 51 made before the jury retires, a party ordinarily cannot claim on appeal that the trial court erred in the giving of an erroneous instruction or the failure to give a requested instruction." (footnotes omitted)).

In order to raise the issue before the district court in the proper manner, the complaining party must comply with Federal Rule of Civil Procedure 51, which states that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds

7

of the objection." FED.R.CIV.P. 51. In the instant case, Russell submitted a proposed jury instruction that the district court rejected. A party may not satisfy the requirements of Rule 51 by merely submitting to the court a proposed instruction that differs from the instruction ultimately given to the jury. *See Kelly v. Boeing Petroleum Servs., Inc.,* 61 F.3d 350, 361 (5th Cir.1995). Moreover, "parties are not entitled to have the jury instructed in the precise language or form they suggest." *Wilson v. Zapata Off-Shore Co.,* 939 F.2d 260, 270 (5th Cir.1991).

In addition to submitting his own instructions, however, Russell's attorney objected to the district court's instructions, stating "can we just have an objection that to the extent that the Plaintiff's requested instructions were not given, we would object on that ground." The court responded, "[t]he objections will be overruled. And the Court will state for the record to the extent the requested instructions of the Plaintiff are not substantially covered—given in the Court's charge, they are refused." In addition, Russell's attorney specifically objected to a portion of the instructions dealing with good faith and undue hardship, but he made no specific reference to the omission of the words "with or without reasonable accommodation" from the definition of qualified individual with a disability.

We have repeatedly held that a general objection to the district court's jury instructions is insufficient to satisfy Rule 51. *See, e.g., Bolton v. Tesoro Petroleum Corp.,* 871 F.2d 1266, 1272 (5th Cir.1989) (finding appellants' objection "to the extent

8

any charge [they] requested was not given by the Court" to be insufficient to "inform the trial court of a perceived problem"); *Tandy Brands, Inc. v. Harper,* 760 F.2d 648, 654 (5th Cir.1985) (finding that appellant's purported objection did "not satisfy Rule 51's requirement that a party state "distinctly the matter to which he objects and the grounds of his objection' " and was not " "sufficiently specific to bring into focus the precise nature of the alleged error' " (quoting *Delancey v. Motichek Towing Serv., Inc.,* 427 F.2d 897, 900 (5th Cir.1970))); *Williams v. Hoyt,* 556 F.2d 1336, 1340 (5th Cir.1977) ("The sweeping generalization that the court's charge to the jury was "fundamentally wrong' and "not a fair statement of the law' does not require extended discussion. Appellants failed to object to the court's instructions."). Russell's objection was not specific enough to apprise the district court of his particular problem with the challenged instruction, and it therefore failed to satisfy the requirements of Rule 51.

A party may be excused from the requirement of making a specific objection only where "the party's position previously has been made clear to the trial judge and it is plain that a further objection would be unavailing."  9A WRIGHT ET AL., *supra,* § 2553. "Only when the appellate court is sure that the trial court was adequately informed as to a litigant's contentions may the appellate court reverse on the basis of jury instructions to which there was no formal objection." *Industrial Dev. Bd. of the Town of Section, Alabama v. Fuqua Indus., Inc.,* 523 F.2d 1226, 1238 (5th Cir.1975).  For example, in *Pierce v. Ramsey Winch Co.,* 753 F.2d

9

416 (5th Cir.1985), this court found that the defendant adequately preserved its objections to the jury instruction by making a general objection to the court's failure to include its requested instructions and by including in the record (1) its proposed instructions that the court had rejected and (2) a memorandum setting forth its position regarding its proposed instructions. *Id.* at 424. In that case, the fact that the objecting party's specific disagreements with the jury instructions were included in the record assured us that the trial court was fully aware of the substance of the objections, and we therefore concluded that the purpose of Rule 51 had been served. *See id.* In contrast, in the instant case, there is no evidence in the record that Russell's position regarding the omission of the words "with or without reasonable accommodation" from the paragraph defining qualified individual with a disability was made clear to the trial judge.[2]

---

[2]At oral argument and in his Reply Brief, Russell's attorney claimed that he explained his specific objection to the instruction at issue to the district court in an off-the-record conference. Russell relies on the Seventh Circuit's decision in *Niehus v. Liberio,* 973 F.2d 526 (7th Cir.1992), to support his argument that the objection need not be stated in the record so long as the trial court has been made aware of it. The *Niehus* court noted that

> nothing in the text of Rule 51 requires that the objection be stated on the record; and the main purpose of the rule—to give the judge a chance to correct an error that might require a reversal and new trial—does not require that the objection be recorded.

*Id.* at 529 (citations omitted).

Russell's reliance on *Niehus* is misplaced. In *Niehus,* the court based its decision, at least in part, on the fact that "[t]he uncontradicted affidavit by the defendants' lawyer ... establishe[d] that there was no violation of Rule 51." *Id.* at 530. We do not think that a party's failure to make a

10

Where the party challenging the district court's instructions has failed to raise the objection before the district court and his position has not been made clear to the court in some other manner, our consideration of the issue is limited to plain error review. *Highlands Ins. Co. v. National Union Fire Ins. Co.,* 27 F.3d 1027, 1031-32 (5th Cir.1994). In order for an appellant to prevail under this level of scrutiny he must show: "(1) that an error occurred;

formal, on-the-record objection or to state clearly the grounds for their objection, as required by Rule 51, may be remedied by the submission of an affidavit stating that the objection was made. Moreover, the holding in *Niehus* conflicts with the settled law of this circuit; we have held that

> [t]he procedure of holding off-the-record charge conferences and failing to reflect what transpired is, we think, in clear violation of the spirit of Fed.R.Civ.P. 51.... Obviously, we cannot consider off-the-record objections to jury instructions not subsequently made part of the record....

*King v. Ford Motor Co.,* 597 F.2d 436, 440 n. 3 (5th Cir.1979). Indeed, this circuit has never approved of off-the-record objections as a method of satisfying the requirements of Rule 51. *Cf. Bolton,* 871 F.2d at 1272 (finding that raising an objection at an informal conference with the trial judge's law clerk was insufficient to preserve the objection where the conference was not on the record); *Burns v. Travelers Ins. Co.,* 344 F.2d 70, 73 (5th Cir.1965) ("If the proper objection does not appear in the record, then the appellate court need not consider the alleged error."). Finally, we note that we are not alone in our strict application of Rule 51; other circuits enforce the requirement that the specific grounds of the objection be clear from the record. *See, e.g., Dupre v. Fru-Con Eng'g, Inc.,* 112 F.3d 329, 334 (8th Cir.1997) (rejecting *Niehus* 's reasoning and holding that "to preserve an argument concerning a jury instruction for appellate review, a party must state distinctly the matter objected to and the grounds for the objection on the record"); *Coy v. Simpson Marine Safety Equip., Inc.,* 787 F.2d 19, 25 (1st Cir.1985) (reviewing jury instructions only for plain error where the specific grounds of the objections "were not stated for the record after delivery of the charge to the jury and no transcript of a conference held in chambers prior to the charge is available").

11

(2) that the error was plain, which means clear or obvious; (3) the plain error must affect substantial rights; and (4) not correcting the error would "seriously affect the fairness, integrity, or public reputation of judicial proceedings.' " *Id.* at 1032 (quoting *United States v. Olano,* 507 U.S. 725, 736, 113 S.Ct. 1770, 1778-79, 123 L.Ed.2d 508 (1993), and holding that " "[t]he principles and decision enunciated in *Olano* apply *a fortiori* in the civil context' " (quoting *Smith v. Gulf Oil Co.,* 995 F.2d 638, 646 (6th Cir.1993))).

*C. Application of the Plain Error Standard to Russell's Claim*

As Russell failed to satisfy the requirements of Rule 51, we review the district court's jury instructions only for plain error. At the outset, Russell must prove that an error occurred. In determining whether a particular jury instruction was erroneous, we consider the jury charge as a whole. *Turnage v. General Elec. Co.,* 953 F.2d 206, 211-12 (5th Cir.1992) ("An inadequate instruction merits reversal when "the charge as a whole leaves us with the substantial and ineradicable doubt whether the jury has been properly guided in its deliberations'." (quoting *Bommarito v. Penrod Drilling Corp.,* 929 F.2d 186, 189 (5th Cir.1991))); 9A WRIGHT, ET AL., *supra,* § 2558 ("In determining whether the charge is erroneous, the charge must be considered as a whole by the appellate court."). Viewed in their entirety, the jury instructions in this case were not erroneous. Although the words "with or without reasonable accommodation" were omitted from the paragraph about which Russell complains, the jury instructions

12

mentioned reasonable accommodation numerous times. Specifically, the explanation of essential functions included a reference to reasonable accommodation, and the term "reasonably accommodate" was explicitly defined shortly thereafter.

Russell claims, however, that the fact that Interrogatory Number 1 directed the jury to consider only whether Russell was a qualified individual with a disability means that it is likely that the jury failed to consider Plano Bank's duty to reasonably accommodate him because that was not mentioned in the definition of qualified individual with a disability. We disagree. "Juries are presumed to follow the instructions of the court." *United States v. Fletcher,* 121 F.3d 187, 197 (5th Cir.1997) (citing *Zafiro v. United States,* 506 U.S. 534, 540-41, 113 S.Ct. 933, 938-39, 122 L.Ed.2d 317 (1993)). The district court's instructions specifically admonished the jurors that they were "not to single out one instruction alone as stating the law, but must consider the instructions as a whole." Absent any indication that the jury was confused by or failed to follow the district court's instructions, we cannot say that the omission of the words "with or without reasonable accommodation" from the paragraph at issue constituted error.

Even assuming, however, that it was error for the district court to omit the language at issue from the definition, the requirements of plain error are exacting and the plain error exception is a narrow one that applies only where " "the error is so fundamental as to result in a miscarriage of justice.' "

13

*Johnson v. Helmerich & Payne, Inc.,* 892 F.2d 422, 424 (5th Cir.1990) (quoting *Sandidge v. Salen Offshore Drilling Co.,* 764 F.2d 252, 262 (5th Cir.1985)); *see also* 9A WRIGHT ET AL., *supra,* § 2558 ("If there is to be a plain error exception to Rule 51 at all, it should be confined to the exceptional case when the error seriously has affected the fairness, integrity, or public reputation of the trial court's proceedings."). Moreover, in considering the requirements of plain error after the Supreme Court's decision in *Olano,* we have stated that

> *Olano* 's requirement of an "obvious" error is stringent. The Court said that "at a minimum" an alleged error must be "clear under current law." *United States v. Frady* [456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816], an opinion cited by *Olano,* required error so clear that "the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." It is the unusual case that will present such an error.

*Highlands Ins. Co.,* 27 F.3d at 1032 (footnotes omitted).

Russell has presented no evidence that the alleged error was "clear under current law." *Id.* In fact, in his own proposed jury instructions Russell cited to the very treatise that contains the pattern jury instruction about which he now complains. *See* 3 HON. EDWARD J. DEVITT ET AL., FEDERAL JURY PRACTICE AND INSTRUCTIONS § 104A.04 (4th ed. Supp.1997). Further, this court has found no cases, in this circuit or in any other, that criticize the pattern jury instruction used by the district court to define qualified individual with a disability. As a result, we cannot conclude that the district court's error, if any, was clear under current law. Thus, while in retrospect a definition of qualified individual with a disability that included the words "with or without reasonable

14

accommodation" may have been preferable, we cannot say that it was plain error for the district court to fail to include such language in a particular paragraph of a twenty-seven page jury instruction which fully explained reasonable accommodation in later paragraphs and admonished the jury to consider the instructions as a whole in deciding on a verdict.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.