United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 2, 2005**

Charles R. Fulbruge III
Clerk

**REVISED FEBRUARY 9, 2005**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 03-20992

_____


SUSAN SEPTIMUS,

                              Plaintiff - Appellee - Cross-Appellant,

vs.

THE UNIVERSITY OF HOUSTON;
THE UNIVERSITY OF HOUSTON
SYSTEM,

                              Defendants - Appellants - Cross-Appellees.


_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before WEINER and PRADO, Circuit Judges, and KINKEADE, District Judge.[1]

KINKEADE, District Judge:

        Susan Septimus ("Septimus") filed claims for gender discrimination, retaliation, and hostile

work environment against the University of Houston and the University of Houston System

(collectively, "the University"). Septimus's discrimination and hostile work environment claims and

one of her retaliation claims were dismissed on summary judgment. Because Septimus failed to

---

[1]District Judge for the Northern District of Texas, sitting by designation.

1

establish a genuine issue of material fact regarding the pretext elements of her gender discrimination claim and one of her retaliation claims, summary judgment on these claims was proper. Septimus's hostile work environment claim was also properly dismissed, because she failed to set forth sufficient evidence that the alleged harassment was severe or pervasive. Septimus's remaining retaliation claims proceeded to trial. With regard to these claims, the court holds that they were subject to a "but for" causation standard rather than the "motivating factor" standard used in the trial court's charge to the jury. The trial court's grant of partial summary judgment is AFFIRMED, the judgment on Septimus's two retaliation claims that went to trial is REVERSED due to the erroneous jury charge, and the case is REMANDED for further proceedings consistent with this opinion.

## I.    Facts and Proceedings

Septimus was an Assistant General Counsel for the University who handled business and transactional matters. In December 1997, after the resignation of Associate General Counsel Bonnie Weisman, the University posted an open Associate General Counsel ("AGC") position for litigation and employment matters. In early 1998, AGC Joseph Williams (who held a "business counsel" position) also resigned from the University, which left open two AGC positions. Brian Nelson, an outside candidate, was interviewed for the litigation and employment AGC position on January 9, 1998.

Later that day, Septimus told the University's General Counsel Dennis Duffy that she was interested in being promoted to the AGC position responsible for business matters. Duffy responded that he would not consider her for promotion because he wanted someone with management experience. Duffy further told Septimus that she had not "stepped up to the plate" in her current position to assume management responsibilities. Nelson was ultimately hired by Duffy as an AGC.

2

Although the University contends that Nelson was hired for the employment and litigation counsel position formerly held by Weisman, the record reflects that Nelson actually handled business and contractual matters. Septimus admits she was not seeking the employment and litigation counsel position, but she claims that Nelson was actually hired for the business counsel position vacated by Williams. She thus contends that Duffy's decision to hire Nelson instead of her for that position was rooted in gender discrimination.

On March 10, 1998, Duffy spent two hours in Septimus's office "haranguing" her while they discussed work matters. Nelson watched and Septimus sobbed uncontrollably. Nelson described this incident as intimidating and inappropriate. Septimus filed an internal discrimination complaint with the University later that month. She also filed an EEOC charge of discrimination regarding the denied promotion. Septimus further alleged in her EEOC charge that Duffy created a hostile work environment.

Because other female employees in the Office of the General Counsel ("OGC") had also complained about Duffy, the University engaged attorney Deborah McElvaney to investigate. In her report dated April 16, 1998, McElvaney concluded there was sufficient evidence that Duffy had discriminated against Septimus in hiring Nelson and that he created a hostile work environment. She also thought that the evidence did not support Septimus's claim that Duffy retaliated against her for filing her internal complaint of discrimination and for her participation in the investigation.

After McElvaney provided her report to University President/System Chancellor Art Smith, he formed a committee of three University administrators to review McElvaney's work. Ultimately, the committee decided that none of Septimus's complaints had merit and denied her internal grievance on all of her claims – gender discrimination, hostile work environment and retaliation.

On May 29, 1998, Smith offered Septimus the choice of remaining in the OGC (supervised by Duffy) or transferring to the position of Director of Contracts Administration ("DCA"), where she would work under a different management group. Smith's offer to move Septimus to contracts administration was conditioned on the requirement that she discontinue practicing law on behalf of the University. Smith's policy was that employees who did not report to the OGC could not practice law. Additionally, Smith conditioned the transfer offer on Septimus's providing a release of her claims against the University. Septimus initially refused the transfer, but eventually accepted it after Smith dropped the requirement that she sign a release.

Septimus began her new job as DCA in July 1998, reporting to John Martin. In her new position, Septimus was required to work with the OGC on any legal issues, relying upon the expertise and judgment of the lawyers in the OGC. She was not permitted to negotiate, modify or draft contracts.

In early March 1999, Ron Miller, another employee who reported to Martin, announced his retirement. Miller's title was Director of Procurement and Campus Services. Prior to leaving, Miller suggested to Martin that Septimus serve as his interim replacement. Despite that recommendation, Septimus was denied the interim position, because Martin's supervisor Randy Harris decided to combine Miller's former position with that of Ann Lamar. That change caused no additional salary expense since Lamar was already earning the salary of an interim division director. Lamar was appointed to the retitled position of Interim Executive Director of Procurement and Auxiliary Services. Septimus views these events as a promotion she received, but that was later rescinded, and claims that the University retaliated against her by awarding the position to Lamar instead. After Lamar's appointment to Interim Director, she became Septimus's supervisor and Septimus no longer

4

reported directly to Martin.

Although Septimus was then reporting to Lamar, Martin criticized her in late 1999 for suggesting revisions to contracts without coordinating her advice with that of the OGC. Septimus was upset at the criticism and resigned from the University in December 1999. After Septimus left, her responsibilities were given to Nelson in addition to his duties as an AGC. In this new role, Nelson continued reporting to the OGC.

Septimus sued the University in September 2000, alleging 1) gender discrimination related to the hiring of Nelson instead of her for the AGC position; 2) retaliation based upon her transfer to the DCA position; 3) retaliation based upon being denied the Interim Director position; 4) hostile work environment; and 5) retaliation through constructive discharge. The district court granted partial summary judgment in favor of the University on Septimus's claims for gender discrimination, hostile work environment, and the retaliation claim related to the Interim Director position awarded to Lamar. On Septimus's claims of retaliatory transfer and constructive discharge, the district court found that genuine issues of material fact existed in the summary judgment record, and denied summary judgment.

The case proceeded to trial on the remaining retaliation claims related to her transfer to the DCA position and her alleged constructive discharge. The jury found for Septimus on these claims and awarded damages. The University now appeals the judgment entered for Septimus, and Septimus cross-appeals the district court's grant of partial summary judgment.

**II.     Discussion**

5

### A. Challenged Jury Instructions

The University appeals the jury's verdict on these claims, arguing that the district court incorrectly instructed the jury regarding the applicable standard of proof for Septimus's retaliation claims.

### 1. Standard of Review

The University did not object to the jury instructions in the district court, and its position was not made clear to the court in some other manner. Accordingly, this court's consideration of the issue is limited to plain error review.[2] For an appellant to prevail under the plain error standard, it must show 1) that an error occurred; 2) that the error was plain, which means clear or obvious; 3) the plain error must affect substantial rights; and 4) not correcting the error would seriously impact the fairness, integrity, or public reputation of judicial proceedings.[3] The plain error exception is designed to prevent a miscarriage of justice where the error is clear under current law.[4]

In determining whether a particular jury instruction was erroneous, we consider the jury charge as a whole.[5] "An inadequate instruction merits reversal when 'the charge as a whole leaves us with the substantial and ineradicable doubt whether the jury has been properly guided in its

---

[2]*Industrias Magromer Cueros y Pieles v. Louisiana Bayou Furs, Inc.,* 293 F.3d 912, 922 (5th Cir. 2002); *Russell v. Plano Bank & Trust,* 130 F.3d 715, 721 (5th Cir. 1997) *cert. denied,* 523 U.S. 1120, 118 S.Ct. 1801, 140 L.Ed.2d 941 (1998).

[3]*Russell,* 130 F.3d at 721.

[4]*Taita Chemical Co., Ltd. v. Westlake Styrene, LP,* 351 F.3d 663, 668 (5th Cir. 2003), *citing Johnson v. Helmerich & Payne, Inc.,* 892 F.2d 422, 424 (5th Cir. 1990).

[5]*Russell,* 130 F.3d at 721; *Turnage v. General Elec. Co.,* 953 F.2d 206, 211-112 (5th Cir. 1992).

deliberations.'"[6]

## 2.      Legal Standard for Title VII Retaliation Claims

The parties agree that this case was litigated and tried as a "pretext" (rather than "mixed-motive") retaliation case.[7] Under the pretext framework, after the employee demonstrates a *prima facie* case of retaliation and the employer carries its burden by stating a legitimate non-retaliatory reason for the employment action, the burden falls to the employee to establish that the employer's permissible reason is actually a pretext for retaliation.[8]

Here, the parties disagree as to the proper standard of proof for the final portion of the above framework.  The University seeks plain error review of the district court's use of the phrase "motivating factor" instead of the "but-for" causation standard in submitting Septimus's retaliation claims to the jury.  Conversely, Septimus contends that the "motivating factor" language employed by the district court was legally proper, and therefore the jury's verdict on these claims should not be disturbed.

Septimus relies primarily on *Fabela v. Socorro Indep. School Dist.*[9] to support her argument that the district court's "motivating factor" language was appropriate for a retaliation claim. In that case the discharged employee presented direct evidence of retaliation and proceeded upon a mixed-

---

[6]*Turnage,* 953 F.2d at 211-12, *quoting Bommarito v. Penrod Drilling Corp.,* 929 F.2d 186, 189 (5th Cir. 1991).

[7]Accordingly, the court need not consider whether the Supreme Court's recent decision in *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S. Ct. 2148, 156 L.Ed.2d 84 (2003), or this court's decision in *Rachid v. Jack in the Box, Inc.,* 376 F.3d 305 (5th Cir. 2004) will affect this case.

[8]*Pineda v. United Parcel Service, Inc.,* 360 F.3d 483, 487 (5th Cir. 2004); *Gee v. Principi,* 289 F.3d 342, 345 (5th Cir. 2002).

[9]329 F.3d 409 (5th Cir. 2003).

motive theory as was then provided for under the framework set out in *Price Waterhouse v. Hopkins.*[10] This court noted in *Fabela* that it is unusual to have direct evidence of retaliatory intent, and that in cases based on circumstantial evidence it has "long recognized the well-trod path by which a plaintiff may demonstrate retaliatory intent through the use of circumstantial evidence and the famed *McDonnell Douglas* burden-shifting framework."[11] Because this is a circumstantial evidence "pretext" case, the standard of proof applied in *Fabela* and other mixed-motive cases is not controlling here.

The *McDonnell Douglas* evidentiary framework applies to Title VII retaliation claims brought under a pretext theory.[12] Under that framework, the employee's ultimate burden is to prove that the employer's stated reason for the adverse action was merely a pretext for the real, retaliatory purpose.[13] The proper standard of proof on the causation element of a Title VII retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred "but for" her protected conduct.[14] This court has "consistently held that in retaliation cases where the defendant has proffered a nondiscriminatory purpose for the adverse employment action the plaintiff has the

---

[10]*Fabela,* 329 F.3d at 415, *citing Price Waterhouse,* 490 U.S. 228, 109 S. Ct. 1775, 104 L.Ed.2d 268 (1988); and *Fierros v. Texas Dept. Of Health,* 274 F.3d 187, 192 (5th Cir. 2001).

[11]*Id., citing Montemayor v. City of San Antonio,* 276 F.3d 687 (5th Cir. 2001); *Portis v. First Natl. Bank,* 34 F.3d 325 (5th Cir. 1994) and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).

[12]*Montemayor,* 276 F.3d at 692; *Portis,* 34 F.3d at 328.

[13]*Pineda,* 360 F.3d at 487; *Gee,* 289 F3d at 345.

[14]*Pineda,* 360 F.3d at 487.

burden of proving that 'but for' the discriminatory purpose he would not have been terminated."[15] Moreover, we have recently stated that the motivating factor test is "less stringent," implying that standard would require a lesser burden of proof.[16] We hold that the district court erred when it used the term "motivating factor" to instruct the jury in this case.

Because the University did not timely raise this issue at trial, the court must determine whether this error requires reversal under the plain error standard. This court has consistently required a "but for" standard for proving causation on a Title VII retaliation claim brought under the pretext framework.[17] Thus, the disputed jury instruction amounts to plain error that should have been clear or obvious. Even when the jury instructions are viewed in their entirety, the substitution of the phrase "motivating factor" for "but for" causation causes us to doubt substantially whether the jury was properly guided in its deliberations. Septimus was held to a lower standard in proving the causation element of her retaliation claims – the ultimate question in this case – and therefore substantial rights of the University were prejudiced. Because the jury was improperly instructed, the outcome of this case may have been affected. Therefore, failing to correct this fundamental error could impact the fairness of the judicial process in this case and could result in a miscarriage of justice.

---

[15]*Pineda,* 360 F.3d at 487; *see also Montemayor,* 276 F.3d at 692 (plaintiff "had the burden of proving that her termination from the Fire Department would not have occurred 'but for' her protected conduct); *Medina v. Ramsey Steel Co., Inc.,* 238 F.3d 674, 685 (5th Cir. 2001) (plaintiff "must demonstrate that he would not have been terminated 'but for' engaging in the protected activity."); *Long v. Eastfield College,* 88 F.3d 300, 305 n.4 (5th Cir. 1996) ("[t]he ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision").

[16]*Pineda*, 360 F.3d at 488 and 490 n.6.

[17]*Pineda,* 360 F.3d at 487, *citing Medina,* 238 F.3d at 685, and *Long,* 88 F.3d at 305 n.4.

### B. Claims Dismissed on Summary Judgment

Septimus cross-appeals the district court's entry of summary judgment on her gender discrimination claim, one of her retaliation claims, and her hostile work environment claim.

### 1. Standard of Review

A district court's grant of summary judgment is reviewed *de novo,* applying the same standard as the district court.[18] Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[19] The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[20]

### 2. Denial of Promotion - Position Awarded to Brian Nelson

To survive summary judgment, Septimus must satisfy the burden shifting test found in *McDonnell Douglas,*[21] and recently reaffirmed in *Reeves v. Sanderson Plumbing Prods. Inc.*[22] Under this test, the plaintiff must first establish a *prima facie* case of discrimination, and if she successfully does so, the defendant shall respond by setting forth its legitimate, non-discriminatory reason for its

---

[18]*Travelers Cas. & Sur. Co. of Am. v. Baptist Health Sys.,* 313 F.3d 295, 297 (5th Cir. 2002).

[19]Fed. R. Civ. P. 56(c); *Hunt v. Cromartie,* 526 U.S. 541, 549, 119 S.Ct. 28, 141 L.Ed.2d 788 (1999).

[20]*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[21]411 U.S.792, 93 S.Ct. 1817.

[22]530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed.2d 105 (2000).

decision.[23]  If the defendant produces a legitimate reason, any presumption of discrimination raised by the plaintiff's *prima facie* case vanishes.[24]  However, the plaintiff may still avoid summary judgment if she demonstrates a genuine issue of material fact whether the legitimate reasons proffered by the defendant are not its true reasons, but instead are a pretext for discrimination.[25]

Septimus may establish her *prima facie* case by showing that she 1) is a member of a protected class; 2) was qualified for her position; 3) was subjected to an adverse employment action; and 4) was replaced by someone outside the protected class, or that other similarly situated persons were treated more favorably.[26]

The summary judgment record shows that in January 1998, the University posted an opening for an AGC to handle employment and litigation matters.  Although Septimus admits she was not qualified for that position, she expressed interest to Duffy in being promoted to Williams's former AGC position, for which she was qualified.  Earlier that day, before Septimus expressed interest in being promoted, Duffy had interviewed Nelson.  Septimus claims that although Nelson was officially hired for the litigation position, for which she admits she was unqualified, he was actually hired, over her, for the business counsel  position she sought.  Accepting these facts as true, we presume that Septimus sufficiently established her *prima facie* case.  Continuing with the applicable burden shifting analysis, the University has set forth a  legitimate, non-discriminatory reason for its actions:  Septimus

---

[23]*Reeves,* 530 U.S. at 142, 120 S. Ct. at 2106; *Okoye v. The University of Texas Houston Health Science Center,* 245 F.3d 507, 512 (5th Cir. 2001).

[24]*Okoye,* 245 F.3d at 512.

[25]*Id.*

[26]*Id.* at 512-13; *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404 (5th Cir. 1999).

11

was less qualified than Nelson for the litigation counsel position.

Finally, we agree with the district court's conclusion that Septimus did not raise a genuine issue of material fact regarding pretext. There is no dispute that she was not qualified for the litigation counsel position for which the University says it hired Nelson. Furthermore, even assuming, as Septimus asserts, that the University actually hired Nelson for a business counsel position similar to the position Septimus wanted, she admits that when she raised the issue with Duffy, he stated that because she had not "stepped up" to assume management responsibilities, she would not be promoted to such a position.

Septimus offered no evidence to contest the reasons Duffy gave to support his decision. The mere fact that Nelson was hired instead of Septimus does not sufficiently raise a material fact issue concerning discriminatory intent by Duffy. Septimus's belief that Duffy's decision was motivated by discrimination, however genuinely held, is not sufficient evidence of pretext.[27] Septimus's reliance on McElvaney's conclusion that she suffered gender discrimination with respect to the hiring of Nelson and the EEOC's determination letter containing a "reasonable cause" finding in her favor as evidence of discrimination also do not permit her to proceed past the summary judgment stage. Septimus did not dispute that she was unqualified for the litigation counsel position, and she proffered no evidence to contest the validity of Duffy's statement that she would not be promoted because she lacked management experience. Therefore, upon review of the relevant underlying facts related to this incident, the court concludes that summary judgment was appropriately entered because Septimus failed to set forth sufficient evidence of pretext.

---

[27]*Roberson v. Alltel Information Svcs.,* 373 F.3d 647, 654 (5th Cir. 2004); *Rutherford v. Harris County, Texas,* 197 F.3d 173, 180 n.6 (5th Cir. 1999).

**3. Rescinded Interim Promotion - Position Awarded to Ann Lamar**

Septimus contends that the University retaliated against her because she did not receive the Interim Director position upon Miller's retirement in March 1999. As stated above with respect to her other retaliation claims, Septimus must first demonstrate a *prima facie* case of retaliation. The elements of her *prima facie* evidentiary showing are 1) that she engaged in a protected activity; 2) that an adverse employment action occurred; and 3) that a causal link existed between the protected activity and the adverse action.[28] If Septimus successfully establishes her *prima facie* case, the burden then shifts to the University to state a legitimate non-retaliatory reason for its action. At this point, any presumption of retaliation drops from the case, and Septimus must show that the University's stated reason is actually a pretext for retaliation.[29]

The record shows that Miller recommended to his supervisor, Martin, that Septimus replace him on an interim basis, and the record further shows that Miller announced Septimus as his interim replacement. However, there is no evidence that Martin was the individual who actually had authority to appoint Septimus to the interim post. When Martin sought Harris's approval for the appointment, Harris instead decided to reorganize the department and appoint Lamar. On these facts, the University argues that Septimus never received the interim promotion and therefore the University never revoked it, leaving her without the adverse employment action that is needed to establish her *prima facie* case. However, Septimus testified that Martin told her Harris had approved the promotion. Therefore, we indulge this inference in Septimus's favor and assume that she did receive the interim promotion and that it was later revoked.

---

[28]*Pineda,* 360 F.3d at 487; *Gee,* 289 F.3d at 345.

[29]*Pineda,* 360 F.3d at 487.

Septimus has not raised a material fact issue regarding whether Harris had a retaliatory motive when he ultimately decided to deny her the interim promotion. To support this contention, she provides proof that Harris was aware of her discrimination complaints and that the denial of the interim promotion occurred only ten months after her March 1998 internal complaint, while her EEOC charge was pending. Additionally, Septimus cites to "ongoing harassment" by Duffy and speculation by Miller that Duffy was somehow involved as proof of retaliatory intent. Septimus has not claimed that Harris, the decision-maker, harassed her. All of this evidence amounts to mere speculation that Harris retaliated against her by awarding the position to Lamar instead. The district court properly entered summary judgment on this claim.

### 4. Hostile Work Environment

Finally, Septimus appeals the dismissal of her hostile work environment claim on summary judgment. The plaintiff in a hostile work environment claim must establish that 1) she belongs to a protected class; 2) she was subjected to unwelcome sexual harassment; 3) the harassment was based on sex; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action.[30] Conduct sufficient to create a hostile working environment must be severe or pervasive.[31] To be actionable, the alleged harassment must have created an environment that a reasonable person would find hostile

---

[30]*Green v. Adminstrators of the Tulane Educational Fund,* 284 F.3d 642, 655 (5th Cir. 2002); *Woods v. Delta Beverage Group, Inc.,* 274 F.3d 295, 298-99 (5th Cir. 2001).

[31]*Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 752, 118 S. Ct. 2257, 141 L.Ed.2d 633 (1998).

or abusive.[32]   Whether an environment is hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance.[33]

Septimus argues that the district court incorrectly found that there was no genuine issue of material fact as to whether the harassment alleged was sufficiently pervasive to establish a claim of hostile work environment under Title VII.  Specifically, Septimus cites to evidence of the two-hour "harangue" in her office, which frightened her and made her feel useless and incompetent.  Septimus also presents evidence that Duffy once questioned her about a presentation in a "mocking tone," and refers to a comment by Duffy that she "was like a needy old girlfriend."   All of Septimus's other summary judgment evidence on this claim pertained to other women in the OGC, not Septimus, and therefore is not relevant.

Much of the complained-of conduct was, as the district court noted, "boorish and offensive."[34] However, Septimus did not personally experience most (if not all) of the conduct complained of by the other women.  As to conduct that was directed at her, Septimus relies on the "harangue" incident, the "mocking tone" directed at her on one occasion, and Duffy's "needy old girlfriend" remark, with nothing more.  The district court properly found that these incidents were collectively insufficient to establish that Duffy's harassment was severe or pervasive enough to make her working environment objectively hostile or abusive.  Accordingly, this claim was correctly dismissed on summary judgment.

---

[32]*Woods,* 274 F.3d at 299.

[33]*Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

[34]*Shepard v. Comptroller of Pub. Accounts,* 168 F.3d 871, 874 (5th Cir. 1999).

15

**III.    Conclusion**

Septimus has not raised a genuine issue of material fact that the University's proffered reasons for denying her an AGC position and the interim promotion into Miller's former position were, respectively, pretexts for gender discrimination or retaliation.  She has also failed to raise a genuine issue of material fact whether Duffy's alleged harassment of her was severe or pervasive.  Therefore, the district court's judgment on these claims is AFFIRMED.  The court further holds that with regard to Septimus's retaliation claims related to her transfer to the DCA position and her alleged constructive discharge, the jury should have been instructed to apply a "but for" causation standard.  Accordingly, the district court's judgment on these claims is REVERSED, and the case is hereby REMANDED for further proceedings consistent with this opinion.  The remaining issues raised in this appeal are related to the portion of the trial court's judgment that we have reversed.  Therefore, because we have reversed the district court's judgment on these claims, we need not reach any of the additional issues raised by this appeal.  AFFIRMED in part; REVERSED and REMANDED in part.